UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MICHAEL MARNELL,

                          Plaintiff,

  -against-                                    1:05-CV-0567
                                                      (LEK/RFT)

DOROTHY CARBO, MARIAN SCHOETTLE,
CHERYL A. GERBER, DAVE EDWARDS,
LISA ALT, JEANNIE EDWARDS, DONNA CIVELI,
PHIL MEAGHER AND BOB KERSHAW, all of the
above as individuals and as Commissioners of the
Kingston Public Access Cable Commission,
CITY OF KINGSTON, TOWN OF ESOPHUS,
TOWN OF HURLEY, TOWN OF KINGSTON
and TOWN OF ULSTER,

                          Defendants.
_____

### MEMORANDUM-DECISION AND ORDER[1]

#### I. Background

This case concerns the regulation of the Kingston Public Access cable channel 23 ("KPA"), a public education and government access channel. Plaintiff Michael Marnell ("Plaintiff") produced a broadcast of the Catholic Mass at St. Joseph's Church on KPA from March 1997 through September 2004, when his producer access card was deactivated permanently. Complaint (Dkt. No. 1) at ¶¶ 13-17. Defendants Marian Schoettle, Cheryl Gerber, Dave Edwards, Lisa Alt, Jeannie Edwards, Donna Civeli, Bob Kershaw, and former Defendants Phil Meagher and Dorothy Carbo, were, in September 2004, Commissioners of Kingston Public Access Cable Commission ("KPACC"), which administers and operates KPA. Id. at ¶¶ 3-4. KPACC's Commissioners are

---

      [1] For printed publication by the Federal Reporters.

appointed by Defendants City of Kingston, Town of Kingston, Town of Esopus, and former Defendants Town of Hurley, and Town of Ulster. Defts. Kershaw and Town of Kingston's Statement of Facts (Dkt. No. 87, Attach. 1) at ¶ 4.

KPACC was created by a resolution of the Common Council of the City of Kingston in May 1995. Defts Marion Schoettle and Town of Esopus' Stat. of Facts (Dkt. No. 80, Attach. 6) at ¶ 3. KPACC's Operating Rules and Regulations prohibit advertisements or other material designed to promote a service, product, business or person. Id. at ¶ 21. KPACC rules define commercial material in an access program as a "minor violation." Id. at ¶ 26. "Major violations," including "chronic and/or willful disregard for KPA policies," can result in disciplinary actions and probationary sanctions. Id. at ¶¶ 24-25.

Plaintiff received financial support for the production of the show from various underwriters. Id. at ¶¶ 53, 58. In the broadcast of his show, Plaintiff listed the names and contact information of underwriters and sometimes included slogans or descriptions of the products and services provided by that underwriter. Id. at ¶ 52; Complaint (Dkt. No. 1) at ¶ 15; Plntf's Responsive Stat. of Facts (Dkt. No. 88, Attach. 3) at ¶ 52. Plaintiff's maximum number of underwriters per broadcast was approximately forty (40). Defts Schoettle and Town of Esopus's Stat. of Facts (Dkt. No. 80, Attach. 6) at ¶ 46. After deducting production and administration costs, Plaintiff realized a net profit of $6,956, $6,903 and $5,383 from the underwriters' financial support of his show in 2001, 2002, and 2003, respectively. Id. at ¶¶ 63, 69, 73.

In 2003, Sheldon Zimbler, then Chairperson of the KPACC, complained to Plaintiff about his use of underwriters. Exam. of Plaintiff (Dkt. No. 81, Ex. L) at 92. Plaintiff did not believe that he was doing anything wrong and, accordingly, declined to change his underwriting practices. Id. at

2

93.   In May 2004, the KPACC posted a sign in the KPA studios limiting the number of underwriters to two (2), effective June 2004, with violation resulting in suspension of producer privileges.  Id. at ¶¶ 122-123,126.  Plaintiff acknowledges having seen and understood this sign when it was posted.  Exam. of Plaintiff (Dkt. No. 81, Ex. L) at 98.  On July 11, 2004, Defendant Marian Schoettle, KPA Commissioner at the time, spoke with Plaintiff and sent him a letter stating that his show was not in compliance with New York law concerning underwriting.  Letter (Dkt. No. 80, Ex. 8); Exam. of Plaintiff (Dkt. 81, Attach. 13, Ex. L) at 106-108.  Plaintiff continued to receive funding and broadcast the names of more than two underwriters per show after this date.  Defts Schoettle and Town of Esopus's Stat. of Facts (Dkt. No. 80, Attach. 6) at ¶ 168;  Plntf's Responsive Stat. (Dkt. No. 88, Attach. 3) at ¶ 168.

In September 2004, KPACC sent Plaintiff a letter, notifying him that his producer access card would be permanently deactivated on September 17, 2004, based on his alleged violation of KPACC regulations, including the "two underwriters" rule.  Complaint (Dkt. No. 1) at  ¶ 17; Letter (Dkt. No. 82, Attach. 8, Ex. EE); Defts Schoettle and Town of Esopus's Stat. of Facts (Dkt. No. 80, Attach 6) at ¶ 184.

Pursuant to the KPACC rules and regulations, Plaintiff filed an appeal of the KPACC decision to remove him as producer on December 13, 2004.  Complaint (Dkt. No. 1) at ¶ 18; Defts Schoettle and Town of Esopus's Stat. of Facts (Dkt. No. 80, Attach 6) at ¶ 209.  KPACC[2] upheld the decision to remove Plaintiff on March 17, 2005, and again on April 14, 2005, when a full quorum was present.  Complaint (Dkt. No. 1) at ¶ 21; Defts Schoettle and Town of Esopus's Stat. of

---

[2] Under KPACC's Operating Rules and Regulations, appeals of disciplinary sanctions are heard by KPACC at a specific hearing date.  Rules and Regulations (Dkt. No. 80, Attach. 3, Ex. 4).

Facts (Dkt. No. 80, Attach. 6) at ¶ 215-18.

KPA continued to broadcast the Catholic Mass at St. Joseph's Church for a short time after removing Plaintiff. Exam. of Plaintiff (Dkt. 87, Attach 3, Ex. G) at 206-207; Defts. Kershaw and Town of Kingston's Stat. of Facts (Dkt. 87, Attach. 1) at ¶ 15.

Plaintiff filed this action on May 11, 2005, alleging that his removal from the station constituted a violation of his constitutional free speech and due process rights. Complaint (Dkt. No. 1) at ¶¶ 22-23, 30. On July 20, 2006, Plaintiff stipulated to discontinue the action, as against Defendants Carbo, Town of Ulster, Meagher, and Town of Hurley. Stipulation and Order (Dkt. No. 74).

Currently before the Court are Motions for Summary Judgment filed by Defendants Schoettle and Town of Esopus (Dkt. No. 80), Defendants Gerber, Edwards, Alt, J. Edwards and City of Kingston (Dkt. No. 84), Defendants Kershaw and Town of Kingston (Dkt. No. 87), and a Cross-Motion for Summary Judgment filed by Plaintiff (Dkt. No. 88).

## II. Discussion

A.   Issue of Money Damages/ Declaratory Judgment

Plaintiff's Complaint includes a request for monetary relief, counsel fees and costs, and such injunctive and other relief as may be proper. Complaint (Dkt. No.1) at ¶ 38. However, in his most recent filing, Plaintiff acknowledges that Section 555a of Title 47 of the United States Code, "The Cable Act," bars him from seeking money damages in this case. Plntf's Mem. of Law (Dkt. No. 88, Attach. 7) at 16. See 47 U.S.C. § 555a(a). The Cable Act limits relief in a suit "against a franchising authority or other governmental entity, or any official, member, employee or agent of such authority or entity, arising from the regulation of cable service..." to declaratory or injunctive

4

relief. 47 U.S.C. § 555a(a). Plaintiff seeks, instead, a declaratory judgment that the "two underwriter" rule, passed by the KPACC, is unconstitutional, and that his due process rights were violated. Plntf's Mem. of Law (Dkt. No. 88, Attach. 7) at 16. Plaintiff argues that this declaratory judgment would provide guidance to the parties in the future. Id.

Federal courts have discretionary authority to issue a declaratory judgment of "the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201(a) (2006). However, this authority is limited to "a case of actual controversy." Id.; See also Dow Jones & Co., Inc. v. Harrods, Ltd., 237 F. Supp. 2d 394, 406 (S.D.N.Y. 2002). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality" to justify judicial intervention. Golden v. Zwickler 394 U.S. 103, 108 (1969). A case does not meet this requirement of immediacy when there is little chance that the plaintiff will suffer an injury in the future. Id. at 109; McCormick ex rel. McCormick v. School Dist. of Mamroneck, 370 F.3d 275 (2d. 2004) ("A plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future") (internal quotations omitted); Malowney v. Fed. Collection Deposit Group, 193 F.3d 1342 (11th Cir. 1999) (noting that a "perhaps" or "maybe" chance of future injury is not sufficient to establish an actual controversy).

Despite Plaintiff's vague claim that a declaratory ruling would "provide guidance to the parties in the future," he has not shown how the facts before the Court constitute an "actual controversy," in that the Plaintiff is likely to suffer future injury from the Two Underwriter rule or

the disciplinary procedures provided by the KPACC.  The injury Plaintiff complains of, losing production privileges at KPA, has already occurred and lies completely in the past.  Plaintiff has not asserted any plans or intentions to apply to produce a show on KPA in the future.  Even if Plaintiff had alleged that the Two Underwriter rule could injure him in the future, that situation is far too remote to establish an actual controversy.

Additionally, issuing a declaratory judgment in the case before the Court would not further the purposes of the DJA.  "The DJA remedy was designed as a means to facilitate early and effective adjudication of disputes at a time when a controversy, though actual, may still be incipient, but before it expands into larger conflict." Dow Jones, 237 F. Supp. 2d at 405.  Declaratory judgments should "minimize the prolongation of disputes" and "avoid the unnecessary accumulation of damages," serving the values of speed, economy and effectiveness.  Id. (citing In re Combustion Equip. Assocs., 838 F.2d 35, 37 (2d. Cir. 1988) and Beacon Const. Co., Inc. v. Matco Elec. Co., Inc., 521 F.2d 392 (2d Cir. 1975)).  None of these values would be met by the issuance of a declaratory judgment in this case.

Because Plaintiff fails to meet his burden of establishing an actual, justiciable controversy for which declaratory relief can properly be granted, his complaint must be dismissed.

B.      Issue of Settlement

Additionally, Plaintiff has moved for judgment against Defendants Cheryl A. Gerber, Dave Edwards, Lisa Alt, Jeanne Edwards, and the City of Kingston ("Kingston Defendants"), based upon an alleged offer of judgment, accepted by Plaintiff.  Plntf's Mem. of Law (Dkt. No. 88, Attach. 7) at

15. The Kingston Defendants object; they concede that their Counsel drafted the document in question in connection to a potential settlement and sent it to Plaintiff's counsel, however, they claim that the document was not an "offer," in that it was explicitly conditional and the conditions prerequisite were never met. Affidavit of Kingston Defts' Counsel, Andrew Regenbaum (Dkt. No. 99). Specifically, these Defendants argue that they made clear to Plaintiff that the offer was contingent on approval of the Kingston City Council. Affidavit (Dkt. No. 99) at ¶ 3. Despite Plaintiff's assertion that the offer was "reneged," Plaintiff has not specifically denied the claim that the contingent nature of the offer was made clear to him. Plntf's Statement of Facts (Dkt. No. 88, Attach. 3) at ¶¶ 10-11. Material facts, not specifically controverted by the opposing party, are deemed admitted. N.D.N.Y Local Rule 7.1(a)(3).

"Offers of judgment pursuant to Fed.R.Civ.P. 68 are construed according to ordinary contract principles." Goodheart Clothing Co. v. Laura Goodman Enterprises, Ltd., 962 F.2d 268, 272 (2d Cir. 1992). The face of the alleged offer of judgment sent to Plaintiff makes no mention of its conditional nature. Offer of Judgment (Dkt. No. 88, Attach. 5). However, as there is no dispute that Defendants, through their attorney Andrew Regenbaum ("Regenbaum"), made Plaintiff aware that the offer of judgment was conditional, Plaintiff would not be justified in relying upon the offer as binding upon the parties. "An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." Restatement (Second) of Contracts § 24 (1981). Under the circumstances, the "offer of judgment" presented by Defendants cannot be understood to be a binding offer.

Additionally, it is clear the Defendants' attorney, Regenbaum, did not have authority to make a valid offer of judgment. The facts show that Regenbaum did not hold out to Plaintiff that he

7

possessed such authority: he told Plaintiff that the offer was contingent upon city council approval at the time the "offer" was communicated and when Plaintiff attempted to accept it. Affidavit (Dkt. No. 99) at ¶¶ 3-5.  See also Fennell v. TLB Kent Co. 865 F.2d 498, 502 (2d Cir. 1989) (noting that "if an attorney has apparent authority to settle a case, and the opposing counsel has no reason to doubt that authority, the settlement will be upheld").  Defendants also did not ratify the 'offer:' "Ratification occurs when the principal, upon learning of an unauthorized act of its agent, acquiesces in, or affirms that act through his conduct by retaining any benefits of the compromise." HNV Cent. River Front Corp. v. U.S., 32 Fed. Cl. 547, 550 (1995).  Plaintiff has not shown that Defendants have taken any action to affirm or benefit from the supposed offer.  For the foregoing reasons, Plaintiff's request that judgment be issued against the Kingston Defendants must be denied.

### III.    Conclusion

Based on the foregoing discussion, it is hereby

**ORDERED**, that the Motion for summary judgment on behalf of Defendants Schoettle and Town of Esopus (Dkt. No. 80) is **GRANTED**; and it is further

**ORDERED**, that the Motion for summary judgment on behalf of Defendants Gerber, Edwards, Alt, Edwards and City of Kingston (Dkt. No. 84) is **GRANTED**; and it is further

**ORDERED**, that the Motion for summary judgment on behalf of Defendants Town of Kingston and Bob Kershaw (Dkt. No. 87) is **GRANTED**; and it is further

**ORDERED**, that the Cross-Motion for Summary Judgment on behalf of Plaintiff (Dkt. No. 88) is **DENIED in its entirety**; and it is further

**ORDERED**, that Plaintiff's Complaint (Dkt. No. 1) be **DISMISSED in its entirety**; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED**

DATED:      June 27, 2007
            Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge